# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————————

No. 02-2836

————————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Roberto Gonzalez-Lopez, | * | |
| | * | [PUBLISHED] |
| Appellant. | * | |

————————————

Submitted: February 11, 2003
Filed: July 14, 2003

————————————

Before HANSEN,[1] Chief Judge, LOKEN and SMITH, Circuit Judges.

————————————

HANSEN, Circuit Judge.

Roberto Gonzalez-Lopez appeals the 57-month sentence imposed by the district court[2] following Gonzalez-Lopez's conviction for illegal reentry by a deported

————————————

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

alien in violation of 8 U.S.C. § 1326(a) & (b)(2) (2000). Specifically, Gonzalez-Lopez argues that his prior state court conviction for Automobile Homicide was not a "crime of violence" for purposes of United States Sentencing Guideline (USSG) Manual § 2L1.2(b)(1)(A)(ii) (2001) and that the court therefore erred in imposing a 16-level enhancement to his offense level. He also takes issue with the court's refusal to grant a downward departure. We affirm Gonzalez-Lopez's sentence.

## I.

Gonzalez-Lopez was indicted on the charge of illegal reentry by a deported alien on January 24, 2002. Gonzalez-Lopez had been deported on three prior occasions: November 22, 1995, December 17, 1999, and January 25, 2000. The December 17, 1999, deportation followed Gonzalez-Lopez's conviction for Automobile Homicide in Utah, for which he received an indeterminate sentence not to exceed five years.

Gonzalez-Lopez pleaded guilty to the illegal reentry charge and the district court concluded at sentencing that Gonzalez-Lopez was subject to the statutory enhancement provided by 8 U.S.C. § 1326(b)(2) (increasing statutory maximum sentence to 20 years for reentry after commission of aggravated felony). In applying the Sentencing Guidelines, the court determined that Automobile Homicide was a crime of violence and increased Gonzalez-Lopez's offense level by 16 levels pursuant to USSG § 2L1.2(b)(1)(A)(ii). The court also declined to depart downward from the enhanced sentencing range so established, rejecting Gonzalez-Lopez's argument that his conviction for Automobile Homicide fell outside the heartland of cases fitting the definition of "crime of violence." The court sentenced Gonzalez-Lopez to 57 months of imprisonment, and Gonzalez-Lopez appeals that sentence.

II.

We review the district court's interpretation of the Sentencing Guidelines de novo. United States v. Gomez-Hernandez, 300 F.3d 974, 977 (8th Cir. 2002), cert. denied, 123 S. Ct. 929 (2003). The primary issue in this case is whether Gonzalez-Lopez's prior conviction for Automobile Homicide is a "crime of violence" as defined in USSG § 2L1.2. Because the definition of "crime of violence" was recently amended for purposes of the guideline, we review the prior definition and the reason for its amendment to better inform our analysis.

A defendant found guilty of illegal reentry following deportation is sentenced pursuant to § 2L1.2 of the Sentencing Guidelines, which provides for a base offense level of 8. A defendant whose previous deportation followed conviction for specific types of crimes receives an enhancement to his base offense level depending on the nature of the previous conviction. Prior to November 1, 2001, a defendant with a prior conviction for any aggravated felony received a 16-level enhancement. See USSG § 2L1.2 (2000). An aggravated felony was defined by reference to 8 U.S.C. § 1101(a)(43), see USSG § 2L1.2 comment. (n.1) (2000), which included "a crime of violence (as defined in section 16 of title 18 . . . ) for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(F). Section 16 of Title 18 in turn defines "crime of violence" as

  (a)    an offense that has as an element the use, attempted use, or
         threatened use of physical force against the person or property of
         another, [the "use" prong] or
  (b)    any other offense that is a felony and that, by its nature, involves
         a substantial risk that physical force against the person or
         property of another may be used in the course of committing the
         offense [the "other" prong].

18 U.S.C. § 16. Thus, before the amendment, a prior conviction for an offense that met either subsection (a) or (b) subjected the defendant to a 16-level enhancement.

3

The Sentencing Commission significantly rewrote section 2L1.2 in 2001, and it now provides "a sliding scale of enhancements from eight to sixteen levels based on the seriousness of the [prior] aggravated felony as defined in the amended guideline." Gomez-Hernandez, 300 F.3d at 976 (discussing change in guideline). The amendment was a response to concern within the legal community that the 16-level enhancement that applied to all aggravated felonies resulted in disproportionate penalties. See USSG Supp. to App. C, amend. 632. Because the prior guideline incorporated the broad definition of aggravated felony found in 8 U.S.C. § 1101(a)(43), "a defendant who previously was convicted of murder, for example, receive[d] the same 16-level enhancement as a defendant previously convicted of simple assault." Id.

"[T]he Commission intended the guideline amendment to break up aggravated felonies by providing the sixteen-level increase only in the case of the more serious offenses . . ., while providing lesser penalties for less serious, but still aggravated, offenses . . .." United States v. Caicedo-Cuero, 312 F.3d 697, 711 (5th Cir. 2002) (discussing the amendments to USSG § 2L1.2), cert. denied, 123 S. Ct. 1948 (2003). To achieve this result, "the Commission developed two categories of crimes of violence . . ., separating those acts that are more serious from those that are less so." Id. It included in the application notes a narrow definition of "crime of violence" to which the 16-level enhancement applied. USSG § 2L1.2, comment. (n.1(B)(ii)). The Commission continued to define an "aggravated felony," which now results in an eight-level enhancement, by reference to the § 1101(a)(43) definition, which includes the broader definition of crime of violence. USSG § 2L1.2(b)(1)(C) & comment. (n.2). The narrower definition (resulting in a 16-level enhancement if applicable) contained in the application notes states that "crime of violence"

(I)     means an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another, and

4

(II)   includes murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses[], robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.

USSG § 2L1.2, comment. (n.1(B)(ii)).

Subsection (I) of the amended guideline definition of crime of violence is identical to the Title 18 U.S.C. § 16(a) definition <u>except</u> that the guideline definition applies <u>only</u> to physical force used against the person, but not the property, of another.  Subpart (II) of the guideline definition is significantly different from 18 U.S.C. § 16(b), however, in that it contains a list of specific crimes and does not include § 16(b)'s catchall phrase "any other offense  . . . that by its nature involves a substantial risk that physical force may be used . . . in the course of committing the offense"–the "other" prong.  Thus, after the amendment, offenses that meet the "other" prong of § 16(b), but do not meet the "use" prong of the guideline's subsection (I) or are not specifically listed in the guideline's subsection (II), subject the defendant to an 8-level enhancement rather than the 16-level enhancement under the prior guideline.

Although most cases addressing the issue of whether a negligent homicide is a crime of violence in varying contexts have relied on the "other" prong in the relevant crime of violence definition, <u>see, e.g.</u>, <u>Omar v. INS</u>, 298 F.3d 710, 718-20 (8th Cir. 2002) (holding that the Minnesota offense of criminal vehicular homicide is a crime of violence under 8 U.S.C. § 16(b)) and cases cited therein, some courts have addressed the issue of whether a negligent homicide offense meets the "use" prong of the definition, with a resulting circuit conflict.  The conflict arises over the issue of whether or not the "use" prong contains an element of intent–must the offense contemplate an <u>intentional</u> use of force.  <u>Compare</u> <u>United States v. Vargas-Duran</u>, 319 F.3d 194, 198-99 (5th Cir. 2003) (holding that crime of violence under the current  § 2L1.2 definition of crime of violence did not require an intent to use force and the defendant's prior conviction for intoxicated assault met the "use" prong

of the guideline definition), United States v. Santana-Garcia, No. 98-2234, 2000 WL 491510, at **2-3 (6th Cir. Apr. 18, 2000) (unpublished) (holding that an Indiana conviction for vehicular homicide is a crime of violence under both prongs of § 16), and Le v. U.S. Atty. Gen., 196 F.3d 1352, 1354 (11th Cir. 1999) (holding that the crime of driving under the influence with serious bodily injury is a crime of violence under § 16(a) because "[c]learly, serious bodily injury is included as an element of this offense," which element "includes the actual use of physical force") with Bazan-Keyes v. INS, 256 F.3d 600, 609 (7th Cir. 2001) (holding that the "use" prong contained in § 16(a) required an intentional use of force and therefore a defendant's prior conviction for homicide by intoxicated use of a vehicle is not a crime of violence under § 16(a)) and United States v. Trinidad-Aquino, 259 F.3d 1140, 1145 (9th Cir. 2001) (noting that by employing the term "use," both prongs of § 16 require some volitional act–intentional or at least reckless–and that a prior conviction for the offense of driving while intoxicated resulting in physical injury to another, for which a defendant could be convicted based on the defendant's mere negligence, did not provide sufficient mens rea to meet the volitional element imposed by the term "use"). The Third Circuit has stated in dicta that "[u]se of physical force is an intentional act, and therefore the first prong of both definitions [under § 16(a) and USSG § 4B1.2(1)] requires specific intent to use force." United States v. Parson, 955 F.2d 858, 866 (3d Cir. 1992) (holding that defendant's conviction for reckless endangering was a crime of violence under the second prong of the career offender guideline, § 4B1.2(a)(2), because the second prong of that guideline focuses on conduct rather than intent to use force). We have not addressed this issue head-on before today. Cf. Omar, 298 F.3d at 713 n.4 (declining to decide whether vehicular homicide was a crime of violence under § 16(a) but noting "that the Sixth Circuit has held in an unpublished opinion that drunk driving homicide is a crime of violence under both § 16(a) and § 16(b)").

To decide whether Subsection (I) of the guideline definition of crime of violence contains a volitional element, we start with the plain language of the

guideline, considering not only its bare meaning, "but also its placement and purpose in the statutory scheme." Bailey v. United States, 516 U.S. 137, 144-45 (1995) (internal quotations omitted). For the purposes of subsection (I), crime of violence "means an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 2L1.2, comment. (n.1(B)(ii)(I)). "Most criminal statutes separate the forbidden acts (the actus reas) from the mental state (the mens rea)." United States v. Rutherford, 54 F.3d 370, 378 (7th Cir.) (Easterbrook, J., concurring), cert. denied, 516 U.S. 924 (1995). The element of the predicate offense that the crime of violence definition is concerned with is the actus reas–the forbidden act. One of three types of acts is required: that the defendant actually use, attempt to use, or threaten to use physical force against another person. The term "use" is a verb, connoting action, as explained by the Supreme Court in Bailey when it held that a defendant must "actively employ" a gun before it is considered to have been "used" during and in connection with the predicate crime. Bailey, 516 U.S. at 150. Gonzalez-Lopez asks us to write in the word "intentional" before the first "use" so that the definition would read "means an offense . . . that has an element the intentional use . . . of physical force." However, the text of the guideline definition mentions only the actus reas and is silent as to the mens rea–or intent–element. See Rutherford, 54 F.3d 378 (Easterbrook, J., concurring).

The Sentencing Commission understands the difference between actus reas and mens rea and specifically includes a scienter element within a guideline when it intends mens rea to be considered. See, e.g., USSG § 2K1.3(b)(2) (increasing the base offense level "[i]f the offense involved any explosive material that the defendant knew or had reason to believe was stolen") (emphasis added); USSG § 2K1.4(a)(1)(A) (setting the base offense level for arson at 24 "if the offense created a substantial risk of death or serious bodily injury . . . and that risk was created knowingly") (emphasis added); USSG § 3C1.1(A) (increasing the base offense level if "the defendant willfully obstructed or impeded . . . the administration of justice

7

during the course of the investigation, prosecution, or sentencing") (emphasis added). Courts, including ours, have refused to read scienter elements into guidelines where the Sentencing Commission has not provided them. See United States v. Brannan, 74 F.3d 448, 453 (3d Cir. 1996) (rejecting argument that USSG § 2K2.1(b)(5), which enhances the base offense level for illegal possession of a firearm "[i]f the defendant used or possessed any firearm . . . in connection with another felony offense," required intentional use or possession and holding that the guideline applied to a defendant who accidently discharged the firearm); United States v. Amerson-Bey, 898 F.2d 681, 683 (8th Cir. 1990) (holding that USSG § 2K2.1(b)(2) (related to possession of a stolen firearm) does not require that the defendant know the gun was stolen). We simply cannot read language into the guideline that clearly is not there. See Omar, 298 F.3d at 720 (holding that the definition of crime of violence in § 16(b) (the "other" prong) does not require an element of intent and "reject[ing] [Omar's] attempt to read more into the words 'may be used' than they can fairly support"). We must determine if the predicate offense which is used to enhance the defendant's offense level for the illegal reentry crime, has as an element the use of physical force against another, irrespective of the predicate offense's mens rea element.

A person commits Automobile Homicide under the Utah statute if he: (1) operates a motor vehicle, (2) in a negligent manner, (3) causing the death of another, (4) while under the influence of alcohol as that phrase is defined by the statute. Utah Code Ann. § 76-5-207(1). As we noted in Omar, "[a] vehicle can exert considerable physical force because of its structure, weight and capacity for motion and velocity." Omar, 298 F.3d at 717. By operating a vehicle, the defendant clearly uses and employs the force attendant with that vehicle. The statute further requires that the defendant cause the death of another, which ties the use of physical force with the requirement that the force be used against another person. Clearly, the requirement that the offender cause death while operating, or using, a vehicle encompasses a requirement that an offender use force against another person to cause the death. Vargas-Duran, 319 F.3d at 196.

8

Gonzalez-Lopez raises only the issue of what volitional element, if any, is required in the predicate offense. He does not otherwise argue that Automobile Homicide does not have as an element the use of physical force against another. There conceivably may be ways to commit the Utah offense of Automobile Homicide wherein the defendant's vehicle is not the source of the death-causing force. If Gonzalez-Lopez had made such an argument, we would be required to look to the charging papers and consider the specific acts charged against Gonzalez-Lopez. See Gomez-Hernandez, 300 F.3d 974, 980. We decline to perform that analysis, however, because Gonzalez-Lopez has limited his appeal to the issue of whether the use of force must be intentional under the guideline. Having considered the issue, we hold that the definition of crime of violence contained in § 2L1.2(b)(1) does not contain a volitional element and the Utah criminal offense of Automobile Homicide contains, as an element, the use of physical force against another.[3]

Gonzalez-Lopez also takes issue with the district court's refusal to grant him a downward departure. A district court's refusal to grant a downward departure is generally unreviewable on appeal, unless the district court had an unconstitutional motive or erroneously believed that it was without authority to grant the departure. United States v. Young, 315 F.3d 911, 914 (8th Cir.), cert. denied, 71 U.S.L.W. 3722 (U.S. May 19, 2003) (No. 02-9949). Gonzalez-Lopez argues that the district court erroneously believed that it lacked authority to depart and therefore we may review its decision for an abuse of discretion.

At sentencing, Gonzalez-Lopez asked the district court to depart downward under USSG § 5K2.0, p.s., arguing that his case was outside the heartland of offenses otherwise included in § 2L1.2's definition of crime of violence because, as the district

---

[3]Our holding makes unnecessary a discussion of whether Automobile Homicide is the equivalent of manslaughter, and thus among the specifically enumerated offenses under subsection (II) of the guideline definition, as urged by the government.

court found, his predicate conviction for Automobile Homicide did not require the intentional application of force. In denying Gonzalez-Lopez's request, the district court stated that "I think that it's consistent with the ruling that I've already made with regard to the issue of the treatment of the vehicular homicide conviction from Utah to conclude that, under the circumstances of this case, a departure would not be authorized. Because I think that the application of the guidelines is appropriate with regard to the enhancement that's already been imposed, I think it would be contrary to that position to suggest that a departure would be authorized under the circumstances, and so I am not going to depart." (Sent. Tr. at 23 (emphasis added).) Gonzalez-Lopez argues that the district court mistakenly believed that it lacked authority to depart on the basis of the seriousness of the offense. We read the district court's comments differently.

A factor that is already taken into account by an applicable guideline can serve as the basis for a downward departure only if that factor exists to an exceptional degree. Koon v. United States, 518 U.S. 81, 96 (1996). Contrary to Gonzalez-Lopez's assertions (Appellant's Br. at 16), § 2L1.2 does take the seriousness of the predicate offense into account by providing a sliding scale of enhancements. See Gomez-Hernandez, 300 F.3d at 976 (noting that the sliding scale is "based on the seriousness of the aggravated felony"); USSG Supp. to App. C, amend. 632 ("The amendment . . . provid[es] a more graduated sentencing enhancement . . . depending on the seriousness of the prior aggravated felony. In doing so, the Commission determined that the 16-level enhancement is warranted if the defendant previously was deported . . . after a conviction for certain serious offenses, specifically, . . . a felony that is a crime of violence . . . ."). The district court found that the 16-level enhancement applied and that, as a legal matter, it would be contradictory to depart on the same basis that made the enhancement applicable to begin with "under the circumstances of this case." The court implicitly recognized the legal standard that applied to its decision whether to grant a downward departure. Within that framework, the district court determined that "the circumstances of this case" did not

10

warrant a departure. "We are without authority to review such a ruling." <u>United States v. VanHouten</u>, 307 F.3d 693, 697 (8th Cir. 2002) (holding that a district court was aware of its authority to depart but chose not to where the district court stated that it had no authority to depart "in a case like this").

III.

The sentence imposed by the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.