**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 2 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOSE TORRES-RUIZ,

      Defendant-Appellant.

No. 03-4160

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 1:03-CR-10-TC)**

---

Scott Keith Wilson, Assistant Federal Public Defender, (Steven B. Killpack, Federal Public Defender, with him on the brief), Salt Lake City, Utah, for the defendant-appellant.

Wayne T. Dance, Assistant United States Attorney, (Paul M. Warner, United States Attorney, with him on the brief), Salt Lake City, Utah, for the plaintiff-appellee.

---

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Defendant Jose Torres-Ruiz appeals the sentence imposed after he pled guilty to

illegal reentry following deportation, in violation of 8 U.S.C. § 1326. Torres-Ruiz

contends the district court erred in characterizing a prior California state conviction for

felony driving under the influence as a "crime of violence" for purposes of U.S.S.G. § 2L1.2. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, vacate Torres-Ruiz' sentence, and remand for resentencing.

I.

On January 13, 2003, Torres-Ruiz was arrested after he jumped from a bus as it was traveling on Interstate 15 in Utah. In a post-arrest interview with a special agent of the Immigration and Naturalization Service (INS), he admitted that he was a native and citizen of Mexico. INS documents indicated he had been deported to Mexico on July 20, 2000, and an INS investigation revealed that he had no applications or petitions pending or approved that would have allowed him to legally enter or remain in the United States. Torres-Ruiz was indicted on one count of illegally reentering the United States following deportation.

Torres-Ruiz' presentence investigation report (PSR) noted that on April 28, 1996, he was convicted in Los Angeles County Superior Court (California) of the felony offense of driving under the influence. The PSR stated that "court documents reflect that the defendant was driving a vehicle with a .28 BAC level, ran a red light and struck a five-year-old girl causing lacerations and bruising." ROA, Vol. III at 4. In calculating Torres-Ruiz' offense level, the PSR concluded the California conviction constituted a "crime of violence" and recommended that his offense level be increased by 16 levels

2

pursuant to U.S.S.G. § 2L1.2(b)(1)(A).[1]  In response to Torres-Ruiz' objection to the

PSR, the government provided the court with a copy of the information containing the

charge to which Torres-Ruiz pled.  Count 2 of the information stated:

> On or about April 28, 1996, in the County of Los Angeles, the crime of DRIVING WITH .20% BLOOD ALCOHOL CAUSING INJURY, in violation of VEHICLE CODE SECTION 23153(b), a Felony, was committed by JOSE TORRES RUIZ, who did willfully and unlawfully while having 0.08 percent and more, by weight, of alcohol in his/her blood, drive a vehicle and in so driving did an act forbidden by law, to wit: FAILURE TO STOP RED LIGHT, and neglected a duty imposed by law which proximately caused bodily injury to ISA SILVA.
> It is further alleged that the defendant(s) had a blood alcohol content of 0.20 percent and more within the meaning of Vehicle Code Section 23206.1.

ROA I, Doc. 16 attachment.  At sentencing, the district court agreed with the PSR and

concluded Torres-Ruiz' prior conviction qualified as a "crime of violence" under

§ 2L1.2(b)(1)(A).  The court stated:  "I find that taking the wheel when drunk certainly

has an element of volition, at least recklessness, and that will be the holding."  Id., Vol. II

at 19.  The district court sentenced Torres-Ruiz to a term of imprisonment of 46 months

(at the low end of the guideline range of 46 to 57 months).

## II.

The issue presented is whether the district court erred in concluding that Torres-

---

[1] As originally prepared, the PSR apparently did not include the 16-level enhancement.  ROA, Vol. III, Addendum at 1.  However, the government objected "to the defendant not receiving a 16-level enhancement for a previous crime of violence," and the probation officer ultimately concurred in the government's position and revised the PSR.  Id.

Ruiz' 1996 California conviction for felony driving under the influence qualified as a "crime of violence" for purposes of § 2L1.2(b)(1)(A)(ii).[2] Because this issue hinges on the interpretation of § 2L1.2(b)(1)(A)(ii) and the commentary thereto, we review it de novo. See United States v. Drewry, 365 F.3d 957, 962 (10th Cir. 2004) (noting district court's interpretation of sentencing guidelines is reviewed de novo). Generally speaking, we interpret the Sentencing Guidelines according to accepted rules of statutory construction. United States v. Robertson, 350 F.3d 1109, 1112 (10th Cir. 2003). "In interpreting a guideline, we look at the language in the guideline itself, as well as at the 'interpretative and explanatory commentary to the guideline' provided by the Sentencing Commission." Id. (quoting United States v. Frazier, 53 F.3d 1105, 1112 (10th Cir. 1995)). "'[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" Id. (quoting Stinson v. United States, 508 U.S. 36, 38 (1993)).

*Section 2L1.2 - structure and history*

Section 2L1.2 of the Sentencing Guidelines sets forth the base offense level, with certain enhancements to the base offense level, for defendants convicted of unlawfully entering or remaining in the United States. More specifically, subsection (a) establishes a

---

[2] At oral argument, Torres-Ruiz' counsel conceded he was not challenging Torres-Ruiz' sentence pursuant to the Supreme Court's recent decision in Blakely v. Washington, 124 S. Ct. 2531 (2004).

4

base offense level of eight for such crimes. Subsection (b) provides a range of enhancements, from four to sixteen levels, if the defendant previously was deported after being convicted of various crimes.

Prior to November 1, 2001, a defendant whose previous deportation followed a conviction for any aggravated felony received a 16-level enhancement under subsection (b). See U.S.S.G. § 2L1.2 (2000). An aggravated felony was defined by reference to 8 U.S.C. § 1101(a)(43), see id. cmt. n.1, which included "a crime of violence (as defined in section 16 of Title 18 . . .) for which the term of imprisonment [was] at least one year." 8 U.S.C. § 1101(a)(43)(F). Section 16 of Title 18 defined (and still defines) "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. Thus, prior to November 1, 2001, a defendant who was deported after being convicted of an offense that fell within the scope of § 16(a) or (b) was subject to a 16-level enhancement to his base offense level.

Section 2L1.2 was amended by the Sentencing Commission effective November 1, 2001. "The amendment was a response to concern within the legal community that the 16-level enhancement that applied to all aggravated felonies resulted in disproportionate penalties." United States v. Gonzalez-Lopez, 335 F.3d 793, 796 (8th Cir. 2003) (citing

5

U.S.S.G. Supp. to App. C, amend. 632). "Because the prior guideline incorporated the broad definition of aggravated felony found in 8 U.S.C. § 1101(a)(43), 'a defendant who previously was convicted of murder, for example, receive[d] the same 16-level enhancement as a defendant previously convicted of simple assault.'" Id.

As amended, § 2L1.2 "now provides 'a sliding scale of enhancements from eight to sixteen levels based on the seriousness of the [prior] aggravated felony as defined in the amended guideline.'" Id. (quoting United States v. Gomez-Hernandez, 300 F.3d 974, 976 (8th Cir. 2002)). An eight-level enhancement now applies to the broad category of "aggravated felonies," which the Sentencing Commission continues to define by reference to the § 1101(a)(43) definition (which, as noted above, in turn refers to the § 16 definitions). U.S.S.G. § 2L1.2(b)(1)(C) & cmt. n.2. The 16-level enhancement is reserved for a more narrow and serious category of crimes, referred to as "crime[s] of violence."[3] U.S.S.G. § 2L1.2(b)(1)(A) & cmt. n.1. At the time the district court sentenced Torres-Ruiz on June 18, 2003, the commentary to § 2L1.2 defined a "crime of violence" as:

> an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and . . . includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.

---

[3] The 16-level enhancement also applies to a handful of other serious crimes, none of which are at issue in this appeal. See U.S.S.G. § 2L1.2(b)(1)(A) (listing crimes).

U.S.S.G. § 2L1.2 cmt. n.1(B)(ii) (2002).[4]

*Prior California conviction*

The crime of felony driving under the influence is not specifically included in

§ 2L1.2 as a "crime of violence." Thus, the only way it can be classified as such is if it

"ha[d] as an element the use, attempted use, or threatened use of physical force against

the person of another." Because the express focus of this inquiry is on the elements of the

state crime at issue rather than the unique underlying circumstances of the crime, we

examine the California statute under which Torres-Ruiz was convicted. Cf. Taylor v.

United States, 495 U.S. 575, 588-89, 600-02 (1990) (applying similar categorical

approach in interpreting Armed Career Criminal Act); United States v. Venegas-Ornelas,

348 F.3d 1273, 1275 (10th Cir. 2003) (applying similar categorical approach in

interpreting U.S.S.G. § 2L1.2(b)(1)'s definition of "aggravated felony").[5]

Torres-Ruiz' conviction for felony driving under the influence arose under

California Vehicle Code § 23153(b), which states:

---

[4] The 2003 version of § 2L1.2 contains a slightly reworded, but essentially identical, definition:

> "Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2003).

[5] The government agrees that we should apply the categorical approach set forth in Taylor and Venegas-Ornelas. See Aplee. Br. at 8-9.

It is unlawful for any person, while having 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver.

The essential elements of a § 23153(b) violation are: (1) a person drove a vehicle while having 0.08 percent or more by weight of alcohol in his or her blood; (2) such person concurrently did some act which violated the law or neglected a duty imposed by law in driving the vehicle; and (3) such violation of law or neglect of duty was a cause of bodily injury to a person other than the driver of the vehicle. See People v. Ellis, 82 Cal. Rptr. 2d 409, 410 (Cal. Ct. App. 1999). Obviously, the first element of the crime does not involve "the use, attempted use, or threatened use of physical force against the person of another." Nor does the government argue the second element of the crime involves "the use, attempted use, or threatened use of physical force against the person of another." Thus, we focus solely on the third and final element of the crime, i.e., that a violation of law or neglect of duty (committed by a person driving while having 0.08 percent or more by weight of alcohol in his or her blood) was a cause of bodily injury to a person other than the impaired driver, as possibly rendering it a "crime of violence" for purposes of § 2L1.2. According to the government, because this final element "requires proof that a driver under the influence cause bodily injury to another, it has as an implicit element the use of physical force against another." Aplee. Br. at 5.

Notably, it is uncontroverted that this final element can be satisfied by negligent

8

conduct. In United States v. Trinidad-Aquino, 259 F.3d 1140 (9th Cir. 2001), the court addressed a similar conviction under California Vehicle Code § 23153 and stated: "The statute plainly provides, and the government does not dispute, that violation can occur through negligent acts, so long as the driver is legally intoxicated when those negligent acts are committed." Id. at 1143; see People v. Hernandez, 269 Cal. Rptr. 21, 26 (Cal. Ct. App. 1990) (affirming § 23153 conviction of defendant who, due to intoxication, allowed truck to stall on heavily traveled freeway at night without activating truck lights or emergency flashers).

*"Crime of violence" - requirement of intentional conduct*

Because negligent conduct can satisfy the third element of a violation of California Vehicle Code § 23153(b), the only way Torres-Ruiz' conviction could result in a 16-level enhancement under § 2L1.2(b)(1)(A) is if that section's definition of "crime of violence" contains no intent requirement. Torres-Ruiz argues that § 2L1.2's "crime of violence" definition contemplates intentional conduct on the part of a defendant, and thus the predicate offense (in this case his prior California conviction) must contain a volitional element. The government, in contrast, argues there is no "requirement that the offender's use of physical force against another be *intentional*." Aplee. Br. at 5 (citing § 2L1.2, cmt. n.1(B)(ii)(I)). For the reasons discussed below, we reject the government's argument and

9

agree with Torres-Ruiz.[6]

To date, two circuits have addressed the precise issue now before us. In United States v. Vargas-Duran, 356 F.3d 598 (5th Cir. 2004), the court, sitting en banc, held that "'the use, attempted use, or threatened use of physical force against the person of another,' U.S.S.G. § 2L1.2, Application Note 1(B)(ii)(I), means that the predicate offense requires that a defendant intentionally avail himself of that force." Id. at 602. In reaching its conclusion, the court began by noting the word "use," as employed in § 2L1.2's definitional language, was not otherwise defined in the Sentencing Guidelines. Id. Accordingly, the court "look[ed] to its plain meaning." Id. After reviewing a number of dictionaries, the court concluded that "[t]he overwhelming majority of authority on the plain meaning of 'use' contemplates the application of something to achieve a purpose." Id. at 603. "Supplementing the word 'force' in place of the indeterminate object 'something' in the aforementioned dictionary definition bears out this meaning: 'use of force' means 'the act of employing force for any . . . purpose,' or 'to avail oneself of force.'" Id. In short, the court concluded, "the plain meaning of the word 'use' requires intent." Id.

---

[6] Torres-Ruiz also contends § 2L1.2's "crime of violence" definition requires that a defendant directly cause, attempt to cause, or threaten to cause physical injury to another person. In other words, he argues that, in committing the predicate offense, the defendant must have been the cause, or source, of the "force" employed (or attempted or threatened to be employed) against the other person. We find it unnecessary to address this argument.

The Fifth Circuit concluded this interpretation of the word "use" was "further supported by the rule of statutory interpretation that requires [a court], when possible, to give each word in a statute operative effect." Id. In particular, the court noted "[t]his rule of construction dictates that the word 'use' must have an operative effect when left standing alone, or when modified by either 'attempted' or 'threatened.'" Id. Citing Black's Law Dictionary, the court noted that "[b]oth an attempt and a threat require intent." Id. Further, the court noted that "[w]ere [it] to interpret 'use of force' inconsistently with its plain meaning–that is, as capable of being performed without intent–[it] would effectively nullify the state of mind required by 'attempted use' and 'threatened use.'" Id. Specifically, the court opined, "how could one intentionally attempt to unintentionally use force, or intentionally threaten to unintentionally use force?" Id.

In contrast, in Gonzalez-Lopez, the Eighth Circuit concluded that § 2L1.2's definitional language does not contain a volitional element. 335 F.3d at 798. In reaching this conclusion, the court began by noting that "'[m]ost criminal statutes separate the forbidden acts (the actus reas) from the mental state (the mens rea).'" Id. (quoting United States v. Rutherford, 54 F.3d 370, 378 (7th Cir. 1995) (Easterbrook, J., concurring)). With this in mind, the court concluded the word "use" "is a verb, connoting action, as explained by the Supreme Court in Bailey[ v. United States, 516 U.S. 137, 150 (1995),] when it held that a defendant must 'actively employ' a gun before it is considered to have

11

been 'used' during and in connection with the predicate crime." Gonzalez-Lopez, 335 F.3d at 798. "The element of the predicate offense that the crime of violence definition is concerned with is the actus reas–the forbidden act." Id. In particular, the court noted, "[o]ne of three types of acts is required: that the defendant actually use, attempt to use, or threaten to use physical force against another person." Id. The court bolstered its conclusion by noting that "[t]he Sentencing Commission understands the difference between actus reas and mens rea and specifically includes a scienter element within a guideline when it intends mens rea to be considered." Id. The court refused to read such a requirement into the definition because, in its view, § 2L1.2's definition of "crime of violence" was "silent as to the mens reas–or intent-element." Id.

In our view, the Vargas-Duran decision is better reasoned. It is apparent from the decision in Vargas-Duran that the Fifth Circuit carefully followed generally-accepted principles of statutory and guideline construction in deciphering the meaning of the term "use," as employed in § 2L1.2's definition of "crime of violence." More specifically, the court exhaustively examined a variety of sources to determine the plain meaning of the term "use." In contrast, the Eighth Circuit in Gonzalez-Lopez arrived at its definition of the term "use" by first concluding, in reliance on a concurring opinion to a Seventh Circuit panel decision, that criminal statutes typically separate the actus reas from the mens reas. Thus, its ultimate conclusion (that "use" refers only to action, as opposed to intent) was clearly foreshadowed by this first, and questionable, analytical step.

12

Moreover, its interpretation of the term "use" is contrary to the plain and ordinary meaning of the word as it is generally defined in legal and English dictionaries.

Although not controlling, useful guidance also can be found in cases construing nearly identical definitional language in two other sources. The first source is U.S.S.G. § 4B1.2, which defines various terms used in § 4B1.1, the career offender provision of the Guidelines. In particular, § 4B1.2(a)(1) (formerly § 4B1.2(1)(i)) defines a "crime of violence" for purposes of § 4B1.1 to include any felony offense (state or federal) that "has as an element the use, attempted use, or threatened use of physical force against the person of another."[7]

In Rutherford, the Seventh Circuit was asked to determine whether a conviction for causing serious bodily injury while driving under the influence qualified as a "crime of violence" under U.S.S.G. § 4B1.2(1)(i). Employing dictionary definitions and the common understanding of the word "use," the court concluded the term implied "intentional availment." 54 F.3d at 373. The court concluded causing serious bodily injury while driving under the influence cannot constitute a "crime of violence" under § 4B1.2(1)(i) because "[n]o availment of force in order to achieve an end is present in a

_____

[7] Significantly, § 4B1.2(a)(2) also defines a "crime of violence" to include any felony offense "that presents a serious potential risk of physical injury to another." As the Second Circuit has noted, this means that the Sentencing Commission recognizes the difference between "use of force" and "injury," and strongly suggests that the "use of force" incorporates an "intent" requirement. Dalton v. Ashcroft, 257 F.3d 200, 207 (2d Cir. 2001).

13

drunk driving accident." Id.

In United States v. Parson, 955 F.2d 858 (3d Cir. 1992), the court was asked to determine whether a defendant's prior conviction for first degree reckless endangering constituted a "crime of violence" under U.S.S.G. § 4B1.2(1). The court examined the language of § 4B1.2(1)(i) and concluded the "[u]se of physical force is an intentional act." Id. at 866. Thus, the court rejected the possibility that the crime of reckless endangering fell within the scope of § 4B1.2(1)(i).

The second source helpful in determining whether § 2L1.2's "crime of violence" definition requires intentional conduct are cases interpreting 18 U.S.C. § 16(a) which, as noted, defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." This definition is identical to § 2L1.2's definition of "crime of violence," except § 16(a) includes the phrase "or property of another," and thereby encompasses a somewhat larger range of crimes.

Perhaps the most notable case construing § 16(a) is the Ninth Circuit's decision in Trinidad-Aquino. The defendant in that case, like Torres-Ruiz, was convicted of illegally reentering the United States following deportation after prior conviction of violating California Vehicle Code § 23153 (driving under the influence of alcohol with bodily injury). The government in Trinidad-Aquino argued at sentencing that defendant's prior conviction qualified as an "aggravated felony" under § 2L1.2 and that defendant should

14

receive a 16-level enhancement to his base offense level (sentencing in the case occurred prior to the November 1, 2001, amendments to § 2L1.2). 259 F.3d at 1142. The district court disagreed, concluding defendant's prior conviction did not qualify as an "aggravated felony" under § 2L1.2 because the conviction "require[d] merely a negligence mens rea." Id. On appeal, the Ninth Circuit agreed with the district court. The court concluded that a "'[c]rime of violence' is not a traditional common law crime" and thus "can only be construed by considering the ordinary, contemporary, and common meaning of the language Congress used in defining the crime." Id. at 1144. The court noted that "[i]n ordinary, contemporary, and common parlance, the 'use' of something requires a volitional act." Id. at 1145 (citing legal and non-legal dictionaries). The court emphasized that "[o]f particular note 18 U.S.C. § 16 defines a crime of violence as one in which physical force is not only 'use[d]' (or threatened to be used, or at risk of being used), but in which the physical force is 'use[d] . . . *against* the person or property of another.'" Id. (emphasis in original). "That means that there must be a volitional feature with regard to the impact or collision, and not simply with regard to the use of the physical force itself." Id. "While it might make sense . . . to say that a person driving a car is volitionally using physical force just by doing so, it does not make sense to say that person is volitionally using physical force *against* someone or something when he neither intended to hit the person or thing nor consciously disregarded the risk that he might do so." Id. (emphasis in original). The court held "that the presence of the volitional 'use

15

. . . against' requirement in . . . 18 U.S.C. § 16 means that a defendant cannot commit a 'crime of violence' if he negligently–rather than intentionally or recklessly–hits someone or something with a physical object."[8]  Id.

The Seventh Circuit reached a similar conclusion in Bazan-Reyes v. INS, 256 F.3d 600 (7th Cir. 2001).  Relying in part on its prior decision in Rutherford, the court concluded the word "use," as employed in § 16(a), "requires volitional conduct."  Id. at 609.  The court further concluded this intent requirement prevented a routine driving-while-intoxicated conviction, as well as a homicide by intoxicated use of a vehicle conviction (which did not require intentional use of force by the driver), from qualifying as "crimes of violence" under § 16(a).  Id.

The Eleventh Circuit reached the opposite conclusion in Le v. United States Attorney Gen., 196 F.3d 1352, 1354 (11th Cir. 1999).  Specifically, the court concluded that a Florida conviction for driving under the influence and causing serious bodily injury was a "crime of violence" under §16(a).  Two factors potentially undercut this decision, however.  First, in our view the court's analysis was extremely conclusory.  The court

---

[8] One member of the Ninth Circuit panel, Judge Kozinski, dissented.  In his view, the combination of "drinking and driving" constituted "reckless conduct" and "'involve[d] a substantial risk' that physical force w[ould] be used against another."  259 F.3d at 1147, 1148.  Judge Kozinski concluded a conviction under § 23153 would constitute a "crime of violence" under the § 16(b) definition.

We note in passing that another panel in United States v. Ceron-Sanchez, 222 F.3d 1169, 1172 (9th Cir. 2000) (involving prior conviction for attempted aggravated assault with a deadly weapon), held that reckless conduct is sufficient to satisfy § 16(a).

16

noted that serious bodily injury was included as an element of the underlying offense and, based on this fact, concluded "one element of the offense include[d] the actual use of physical force." Id. Second, because the case was an appeal from a decision of the Board of Immigration Appeals, the court was asked to decide only whether the Board's interpretation of § 16(a) was reasonable. Id. at 1353-54. As this court noted in United States v. Lucio-Lucio, 347 F.3d 1202, 1204 (10th Cir. 2003), "[d]eciding that an interpretation [of the Board] is reasonable is not to decide that it is correct." Thus, it is unclear whether the Eleventh Circuit would have reached the same conclusion if it had been asked to decide the issue de novo.[9]

Finally, we find useful guidance in Lucio-Lucio, where we addressed whether a defendant's prior Texas felony conviction for driving while intoxicated (DWI) was an "aggravated felony" for purposes of U.S.S.G. § 2L1.2.[10] As previously noted, § 2L1.2 defines the phrase "aggravated felony" by effectively incorporating the definition of "crime of violence" found in 18 U.S.C. § 16. The court in Lucio-Lucio concluded the

---

[9] The Supreme Court has granted certiorari in Leocal v. Ashcroft, 158 L. Ed. 2d 76 (2004), another case arising out of the Eleventh Circuit. At issue in that case is whether a conviction for driving under the influence with serious bodily injury, in violation of a Florida criminal statute, constitutes a "crime of violence" under 18 U.S.C. § 16(a). Obviously, the resolution of Leocal will be relevant here but it appears it may be some time before the Supreme Court hears oral argument in that case.

[10] The Texas DWI statute states that DWI occurs "if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04. If this conduct is preceded by two or more similar alcohol-related offenses, the defendant can be charged with a felony. Id. § 49.09. Defendant's prior Texas conviction had been charged and sentenced as a felony because he had prior DWI convictions.

17

crime of DWI at issue did not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another," which was required to bring the crime within the scope of § 16(a), and left for another day whether the use of force contained in § 16(a) required proof of an intentional act. That left only the possibility that the crime of DWI at issue fell within the scope of § 16(b), which defines a "crime of violence" as any felony offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." In addressing this issue, the court concluded that "[f]or a use of force to be 'in the course of committing the offense,' . . . it must be part of the course of action that the offender commits–and thus it . . . must be actively committed." 347 F.3d at 1205. The court concluded "this kind of active commission [usually] carries a connotation of at least some degree of intent." Id. at 1206. Ultimately, the court concluded the crime of DWI at issue did not require such intent:

> [A] drunk driver typically does not mean to cause an accident at all, and can hardly be said to "commit" the resulting violence in the same way that a burglar does. Although the drunk driver recklessly risks harming others, the risk is not that this will happen intentionally (as in burglary). Rather, it is that the impairment of the driver's faculties will result in negligent driving, which in turn will result in an accident. Thus, while burglary and DWI are similar in that they both recklessly risk harm, they differ greatly in the character of the act that immediately causes the harm. A burglar is reckless of the risk of committing an intentional act of violence; a drunk driver is reckless of the risk that he will accidentally cause harm. Whatever the precise degree of intent necessary to separate violent conduct from conduct that leads to harmful consequences, it seems plain that DWI resulting in an accident–which, when it happens, is a purely unintended result–falls into the latter category. Hence, DWI is not within the ambit of § 16(b).

18

Id.

### III.

We conclude that the phrase "crime of violence," as used in U.S.S.G. § 2L1.2(b)(1)(A), incorporates an intent requirement that cannot be satisfied by negligent conduct. In turn, we conclude that Torres-Ruiz' prior California conviction for violation of California Vehicle Code § 23153(b) does not qualify as a "crime of violence," and that the district court erred in imposing a 16-level enhancement to his offense level under § 2L1.2(b)(1)(A).

We VACATE Torres-Ruiz' sentence and REMAND to the district court for resentencing.